IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2009 SEP 25  PM 4: 44

| | |
|---|---|
| THE ASSOCIATION OF AMERICAN § <br> PHYSICIANS & SURGEONS, INC., § <br> PLAINTIFF, § <br> § <br> V. § <br> § <br> THE TEXAS MEDICAL BOARD, § <br> ROBERTA M. KALAFUT, § <br> INDIVIDUALLY AND IN HER OFFICIAL § <br> CAPACITY; LAWRENCE L. ANDERSON, § <br> INDIVIDUALLY AND IN HIS OFFICIAL § <br> CAPACITY; MICHAEL ARAMBULA, § <br> INDIVIDUALLY AND IN HIS OFFICIAL § <br> CAPACITY; JULIE K. ATTEBURY, § <br> INDIVIDUALLY AND IN HER OFFICIAL § <br> CAPACITY; JOSE BENAVIDES, § <br> INDIVIDUALLY AND IN HIS OFFICIAL § <br> CAPACITY; PATRICIA S. BLACKWELL, § <br> INDIVIDUALLY AND IN HER OFFICIAL § <br> CAPACITY; MELINDA S. FREDRICKS, § <br> INDIVIDUALLY AND IN HER OFFICIAL § <br> CAPACITY; MANUAL G. GUARJARDO, § <br> INDIVIDUALLY AND IN HIS OFFICIAL § <br> CAPACITY; AMANULLAH KAHN, § <br> INDIVIDUALLY AND IN HIS OFFICIAL § <br> CAPACITY; MELINDA MCMICHAEL, § <br> INDIVIDUALLY AND IN HER OFFICIAL § <br> CAPACITY; MARGARET MCNEESE, § <br> INDIVIDUALLY AND IN HER OFFICIAL § <br> CAPACITY; CHARLES E. OSWALT, § <br> INDIVIDUALLY AND IN HIS OFFICIAL § <br> CAPACITY; LARRY PRICE, § <br> INDIVIDUALLY AND IN HIS OFFICIAL § <br> CAPACITY; ANNETTE P. RAGGETT, § <br> INDIVIDUALLY AND IN HER OFFICIAL § <br> CAPACITY; PAULETTE BARKER § <br> SOUTHARD, INDIVIDUALLY § <br> AND IN HER OFFICIAL CAPACITY; § <br> TIMOTHY J. TURNER, INDIVIDUALLY § <br> AND IN HIS OFFICIAL CAPACITY; § <br> TIMOTHY WEBB, INDIVIDUALLY § | CIVIL NO. A-08-CV-675-LY |

| | |
|---|---|
| AND IN HIS OFFICIAL CAPACITY; | § |
| IRVIN E. ZEITLER, INDIVIDUALLY | § |
| AND IN HIS OFFICIAL CAPACITY; | § |
| DONALD PATRICK, INDIVIDUALLY | § |
| AND IN HIS OFFICIAL CAPACITY; | § |
| AND JOHN DOES 1-10, WHO ARE | § |
| WORKING FOR THE TEXAS | § |
| MEDICAL BOARD, INDIVIDUALLY | § |
| AND IN THEIR OFFICIAL CAPACITIES, | § |
| DEFENDANTS. | § |

## ORDER

Before the Court is the above styled and numbered cause, which was transferred to this Court from the United States District Court for the Eastern District of Texas, Texarkana Division.[1] On December 8, 2008, the Court held a telephone status conference at which all parties were represented by counsel, and during which the Court heard counsels' arguments regarding several pending motions. Having considered the motions, responses, replies, the file, the applicable law, and counsels' statements and arguments at the December 8 conference, the Court will dismiss Plaintiff The Association of American Physicians & Surgeons's ("Association") claims for lack of subject-matter jurisdiction.

### Factual and Procedural Background

The Association is a not-for-profit membership organization incorporated under the laws of Indiana and headquartered in Tucson, Arizona. By its action, the Association alleges that its members include thousands of physicians nationwide, including physicians in Texas, and that Defendants the Texas Medical Board ("Board") and its members have violated several of the Association members' rights under the United States Constitution or federal law. *See* 42 U.S.C.

---

[1] *Association of Am. Physicians & Surgeons v. Texas Med. Bd.*, No. 07-CV-191-DF-CMC (E. D. Tex. Dec. 20, 2007).

§ 1983 ("Section 1983"). The Association, contending that the protection of its members from arbitrary and unlawful governmental action is central to the Association's mission, commenced this action on behalf of its members seeking only declaratory and injunctive relief. Specifically, the Association alleges that the Board and its members violated several of the Association members' constitutional rights and claims the Board and its members committed the following constitutional violations under Section 1983 by "impairing the liberty interests in reputation, the property interest in medical licensing, and the economic well-being of [the Association's] members": (1) by abuse of anonymous complaints; (2) by engaging in conflicts of interest; (3) by arbitrary rejection of administrative rulings; (4) breaching privacy of investigated physicians; (5) by retaliation which has chilled the Association members' free speech rights. The Association asks this Court to enjoin the Board and its members, in their official and individual capacities, from continuing to violate the Association members' constitutional rights. The Association alleges that this Court has subject-matter jurisdiction over the claims in this cause pursuant to Title 28 United States Code sections 1331 and 1343(a)(3).

The Board and its members answered and filed a motion to dismiss, motion for more definite statement, and a motion to change venue. Additionally, the Board moved to quash several subpoenas, sought a protective order, and a stay of discovery. The United States District Court for the Eastern District of Texas, denied the motions to quash, granted the Board's request for a change of venue, and transferred the case to this Court.

The live pleadings are the Association's Complaint filed December 20, 2007, and the Board and its members' Defendants' First Amended Answer And Affirmative Defenses to Plaintiff's Complaint filed February 20, 2008. The following motions, responses, and replies are pending: The

Association's Plaintiff's Motion To Compel Defendant Texas Medical Board To Comply With Plaintiff's First Request For Production of Documents and Things filed September 22, 2008 (Clerk's Doc. No. 72), the Board's response filed October 10, 2008 (Clerk's Doc. No. 80), the Association's reply (Clerk's Document No. 90); the Board and its members's Defendants' Rule 12(b)(1) Motion To Dismiss Claims For Lack of Standing filed October 10, 2008 (Clerk's Doc. No. 81), the Association's response filed October 24, 2008 (Clerk's Doc. No. 93), and the Board and its members's reply filed November 11, 2008 (Clerk's Doc. No. 94); the Board and its members's Motion To Quash And For Protective Order filed October 23, 2008 (Clerk's Doc. No. 91), the Association's response filed November 6, 2008 (Clerk's Doc. No. 97), and the Board and its members's reply filed November 17, 2008 (Clerk's Doc. No. 101); and the Board and its members's Motion To Stay Discovery filed October 24, 2008 (Clerk's Doc. No. 92), the Association's response filed November 7, 2008 (Clerk's Document No. 98), and the Board and its members's reply filed November 17, 2008 (Clerk's Document No. 102). Also before the Court are letters from the parties, which address the Court's request that the parties specifically identify items of discovery they believe are necessary to resolve the outstanding motions (Clerk's Document Nos. 103 & 104).

### Defendants' Rule 12(b)(1) Motion To Dismiss[2]

By this motion, the Board and its members contest the Association's standing to prosecute the claims raised, either in its own right or on behalf of its members, and moves to dismiss all claims

---

[2] Initially the Court considers the Board and its members Defendants' Rule 12(b)(1) Motion To Dismiss Claims For Lack of Standing filed October 10, 2008 (Clerk's Doc. No. 81), the Association's response filed October 24, 2008 (Clerk's Doc. No. 93), and the Board and its members's reply filed November 11, 2008 (Clerk's Doc. No. 94).

4

for lack of subject-matter jurisdiction. *See Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *Warth v. Seldin*, 422 U.S. 490, 511 (1975).

The Association disagrees, arguing that as an organization with aggrieved individual members this Court has subject-matter jurisdiction over all of the alleged Section 1983 claims. Specifically, the Association contends that it may proceed with its Section 1983 claims on its members' behalf because the Association seeks only declaratory and prospective injunctive relief. Finally, the Association argues that the Board and its members' motion to dismiss, filed nine months after the answer was filed is untimely, and the Court need not allow such an untimely motion to interfere with ongoing discovery.

Initially, the Court rejects the Association's argument that the Board and its members' motion challenging standing is untimely. Standing, an essential component of federal subject-matter jurisdiction, can be raised at any time, by any party, or by the Court. *See* Fed. R. Fed. P. 12(h)(3); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *McCall v. Dretke*, 390 F.3d 358, 361 (5th Cir. 2004).

Because a plaintiff must satisfy the case-or-controversy requirement of Article III of the United States Constitution to properly invoke the court's jurisdictional powers, standing must be resolved as a preliminary matter and it is not subject to waiver. *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996). A case is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Attacks on subject-matter jurisdiction come in two forms, facial attacks on the complaint and factual attacks, which challenge jurisdiction irrespective of the pleadings. *See Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981). With

5

factual attacks, matters outside the pleadings, such as testimony and affidavits, may be considered. *See id.* Facial jurisdictional attacks are directed to the plaintiff's complaint and the court must determine if the plaintiff has sufficiently alleged a basis of subject-matter jurisdiction. *Id.* In a facial challenge to subject-matter jurisdiction, the allegations in the complaint are taken as true for purposes of the motion. *Id.*

Subject-matter jurisdiction in federal court requires that the party invoking the court's jurisdiction, here the Association on behalf of its unnamed members, bears the burden of establishing: (1) an injury in fact; (2) that is traceable to the defendants' conduct; and (3) that would be redressed by a federal district court's favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The injury must be actual or imminent, not conjectural nor hypothetical. *Lujan*, 504 U.S. at 561.

Constitutional standing requires that the plaintiff personally suffered some actual or threatened injury that can fairly be traced to the challenged action and is redressable by this Court. *See Doe v. Tangipahoa Parish Sch. Bd.*, 494 F.3d 494, 496 (5th Cir. 2007). The standing requirement "tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). Standing to sue must be proved, not merely asserted, in order to provide a concrete case or controversy and to confine the courts' rulings within the proper judicial sphere. *Tangipahoa Parish Sch. Bd.*, 494 F.3d at 496-97.

Initially, the Court finds lacking an assertion that any defendant took any improper action against the Association as an entity. All claims for relief are brought by the Association on behalf

of its unnamed members. The Association asserts that it has standing under what is often referred to as the "associational standing doctrine" and bears the burden of establishing standing "in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

In determining whether an association has standing to maintain a suit to redress its members' injuries, rather than an injury to itself, well-established precedent provides:

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt*, 432 U.S. at 343 (the "*Hunt* test").

Defendants contend that the Association cannot satisfy the second prong of the *Hunt* test because the interests at issue are not within the Association's stated purposes. Additionally, Defendants contend that the Association cannot satisfy the third prong of the *Hunt* test because individual participation by certain of the Association's members is required to resolve each of the Association's claims. The Court will first address the Board and its members' argument that the Association lacks standing because the claims asserted or the relief requested requires the participation of individual members of the Association, thus the Association fails the third prong of the *Hunt* test.

Prior to *Hunt*, in *Wrath v. Seldin*, the Supreme Court held that an organization seeking to recover *damages* on behalf of its members lacked standing because "whatever injury may have been

7

suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof." 422 U.S. at 515-16.

> If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.

*Id.* at 515. Some courts have held that simply seeking declaratory or injunctive relief and not damages does not necessarily lead to a conclusion that an association satisfies the third prong of the *Hunt* test. *See Cornerstone Christian Schs. v. University Interscholastic League*, 563 F.3d 127, 133 (5th Cir. 2009) (despite requesting only declaratory or injunctive relief association lacked standing to raise free-exercise claim on behalf of its members because resolution of that claim necessarily required participation by association's members); *Bano v. Union Carbide Corp.*, 361 F.3d 696, 715-16 (2d Cir. 2004); *Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Soc. & Rehab. Svcs.*, 958 F.2d 1018, 1022 (10th Cir. 1992). Associational standing carves only a narrow exception from the ordinary rule that a litigant "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499. If the involvement of individual members of an association is necessary, either because of the substantive nature of the claim or the form of relief sought requires an association member's participation, the standing of an association is limited to bringing claims arising out of injuries that the organization, not simply its members, suffered. *See Bano*, 361 F.3d at 715.

Again, the third prong of the *Hunt* test provides that an organization lacks standing to assert claims of injunctive relief on behalf of its members where "the fact and extent" of the injury that

gives rise to the claims for injunctive relief would require individualized proof or where the relief requested would require the participation of individual members in the lawsuit. *Wrath*, 422 U.S. at 515-16; *Hunt*, 432 U.S. at 343. On the other hand, where the organization seeks a purely legal ruling without requesting that the federal court award individualized relief to its members, the *Hunt* test may be satisfied. *See International Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Brock*, 477 U.S. 274, 287-88 (1986) (union had standing and could litigate action without participation of individual claimants for determination of pure question of law: whether Secretary properly interpreted Trade Act's eligibility provisions); *Hunt*, 432 U.S. at 344 (organization had standing because "neither the interstate commerce claim nor the request for declaratory and injunctive relief require[d] individualized proof and both [w]ere thus properly resolved in a group context").

With this background, the Court proceeds to consider the nature of the Association's claims and relief requested and to determine whether the proof and resolution of the Association's claims requires individual participation by the Association's members.

Defendants contend that the claims asserted and the relief requested by the Association necessarily requires the participation of the individual members of the Association who are affected by the particular claims in this action.

The Association responds that references in the Complaint to unnamed individual members are solely to satisfy the first prong of the *Hunt* test, and that individual members' participation is unnecessary to prove the Association's claims. The Association contends that all of the necessary evidence to prove its claims is in the possession of the Defendants and can be readily produced. Further, argues the Association, any declaration or injunctive relief rendered by this Court would

inure to all members of the Association. The Association argues that at minimum, without any involvement in the action by any member of the Association, this Court can declare the unlawfulness of the Board's methods, which will protect all of the Association's members in future proceedings before the Board. Thus, the Association contends, as the Court could grant some relief without individual participation by its members, dismissal of the action for failure to meet the third prong of the *Hunt* test would be improper.

Defendants respond that the Association's argument is that production of certain documents would establish the Association's claims, in essence as a matter of law, without the need for any further involvement from any of the Association's individual members. Based on the specific claims raised in the Complaint, Defendants disagree with the Association's position and assert that proof and resolution of the Association's claims will unavoidably require individual participation of its members who are affected by the alleged wrongdoing.

All claims alleged by the Association are Section 1983 claims. Section 1983 imposes liability on anyone who, under color of state law, deprives a person of any rights, privileges, or immunities secured by the United States Constitution and federal laws. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997), *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980). In order to seek redress through Section 1983, "a plaintiff must assert a violation of a federal *right*, not merely a violation of federal law." *Blessing*, 520 U.S. at 340.

The Association claims that Defendants violated the constitutional rights of some if its members, who are unnamed physicians, in a variety of ways–engaging in conflicts of interest, abuse and manipulation of anonymous complaints to the Board about some of the Association's member physicians, arbitrarily rejecting certain administrative rulings, breach of some of the member

physicians' privacy, and violations of several members' freedom of speech. The Association, asserts that, although not seeking monetary damages, it is seeking declaratory and injunctive relief from the Court ordering the Board to cease the complained-of actions and enjoining the Board from continuing such actions.

The Association cites several cases as authority for this Court to find that the Association has met the third prong of the *Hunt* test.[3] The Court however, finds each of the cases upon which the Association relies to be distinguishable from this case. In each of the Association's cited cases, not all of which address standing, all claims alleged applied to all members of the complaining organization. Unlike the cited cases, at the heart of each of the Association's claims is that Defendants violated one or several of the Association members' individual constitutional rights. In this action, the individual rights of all members of the Association are not at issue. Further, the Court finds that in each of the cited cases, all members of the organization benefitted directly from the particular injunctive relief rendered by each Court; that would not be true here, as the individual rights of many Association members are not alleged to have been violated by the Board or its members.

---

[3] The Association's response to Defendants' motion to dismiss provides, "Courts routinely find associational or representative standing for groups like [the Association] to litigate the types of injuries that [the Association] complains about here." The Association proceeds citing to this Court the following cases: *NAACP v. Alabama*, 357 U.S. 449, 458-58, 462 (1958); *Eastern Paralyzed Veterns Ass'n Inc. v. Secretary of Veterans Affairs*, 257 F.3d 1352, 1356 (Fed. Cir. 2001); *Jackson Court Condo., Inc. v. City of New Orleans*, 874 F.2d 1070, 1076-77 (5th Cir. 1989); *O'Hair v. White*, 675 F.2d 680, 691-92 (5th Cir. 1982); *Church of Scientology v. Cazares*, 638 F.2d 1272, 1278 (5th Cir. 1981); and *P.L.S. Partners, Women's Med. Ctr. of R.I., Inc. v. City of Cranston*, 696 F.Supp. 788, 789 (D. R.I. 1988).

Neither party directs this Court to Fifth Circuit authority directly on point for the types of claims raised in this cause.[4] Defendants contend that the most similar case to this action is *Kansas Health Care Ass'n*, where the Tenth Circuit determined that, although the plaintiff association sought only injunctive and declaratory relief, because proof and resolution of the claims asserted unavoidably required individual participation by the association's members, the association lacked standing in federal court to maintain its claims. 958 F.2d at 1021-23.

The Association alleges that the Board mishandled anonymous complaints as follows, "A member of [the Association] has been subjected to an ostensibly anonymous complaint concerning his treatment of five patients from New York City, all of whom were very pleased with his treatment." The Court fails to envision a manner in which the Association might prove this claim absent the involvement of the Association's physician member at issue.

With regard to the Association's allegations that the Board engaged in conflicts of interests, the Complaint's relevant factual allegations are regarding actions by a former Board member, Dr. Keith Miller:

> In the case of one member of [the Association], Miller falsely stated that the disciplined physician had killed a patient. That false statement led to a malpractice case against the physician.
>
> Another member of [the Association] was subjected to discipline by an Informal Show Compliance and Settlement Conference (ISC) panel let by Miller, despite his conflicts of interest.

---

[4] The Fifth Circuit recently addressed whether an association seeking only declaratory or injunctive relief had met the third prong of the *Hunt* test with regard to a free-exercise claim, that is whether the free-exercise claim asserted by the association required for resolution the participation of individual members in the lawsuit. *See Cornerstone Christian Schs. v. University Interscholastic League*, 563 F.3d 127, 133 (5th Cir. 2009). The Circuit determined that the holding in *Harris v. McRae* governed the issue and that the association lacked standing to continue with the free-exercise claim on behalf of its members in the action. *Id.* (citing, 448 U.S. 297, 321 (1980)).

> Yet another member of [the Association] was subjected to an unjust ISC proceeding led by Miller, after which the targeted physician agreed to the terms as approved by the two-person ISC panel.

The alleged net effect of Miller's conduct is described in the Complaint as,

> Some of these disciplinary decisions have caused other state medical boards, under the doctrine of reciprocity, to automatically take action against the licenses of physicians, including at least one member of [the Association], in the other states without examining the underlying facts.

Here again, based on these allegations, the Association must establish the involvement of the physician member at issue to prove its claim. The Court finds the Association's allegations cannot be proved absent the participation of individual member physicians.

With regard to the Association's allegations that the Board arbitrarily rejected administrative rulings, the entirety of this section of the Complaint relates to a single, unnamed doctor's dispute with the Board initiated by a patient's complaint concerning charges levied against the patient for copies of the patient's medical records. The Complaint's allegations with regard to this claim are,

> [a] member of [the Association] used the hospital rate in requesting $81 from a patient as a copying charge to comply with her request for a copy of her medical records.
>
> Miller did not allow the member's attorneys to present a defense, and instead Miller made abusive remarks like, "Son, don't you know who gives you your license."
>
> The physician spent tens of thousands of dollars in legal fees and never even collected the copying charge for the records that he provided to the patient.
>
> This discipline and sanction were reported to the National Practitioners Data Bank (NPDB) and became known to insurance companies and hospitals, to the detriment of the physician.

Again, with regard to this claim, the Court finds that proof will necessarily involve the individual physician.

With regard to the Association's allegations that the Board breached the privacy rights of several of its member physicians, all of the facts alleged in the Complaint relate to individual doctors' disagreements with the members of the Board.

> A member of [the Association] was involved in a private dispute with a private hospital.
>
> Defendant Anderson traveled to the physician's town and delivered confidential records about this physician to the hospital in an attempt to interfere with its relationship with the physician. The physician was not given any opportunity by the [Board] to rebut the allegations and disprove the false statements. The hospital then acted to the financial detriment of the physician by relying on these confidential, unproven allegations.
>
> Another member of [the Association] was victimized by a leak by a Defendant John Doe No. 1 of the [Board] of its complaint against him to the Houston Press on or about August 24th, four days before his own attorney received the Complaint. The Houston Press then smeared the good physician based on the one-sided and unproven allegations leaked to it by a Defendant John Doe No. 1 on behalf of the Defendant [Board].

As with the Association's other claims, participation by the individual doctor is necessary to resolve whether indeed breaches of privacy occurred.

With regard to the Association's allegations that the Board violated its members' free speech rights, the Complaint's relevant factual allegations relate to an unnamed participant on a radio call-in show and another relates to alleged testimony at a legislative hearing:

> A listener to one radio program that included criticism of the [Board] called the [Board] during or after the show and spoke to [Board member] John Doe No. 2. Defendant John Doe No. 2, representing

> the [Board] responded to the call with the baseless attacks on the physician, who is a member of [the Association]. Defendant John Doe No. 2 referred the caller to a defamatory website named "www.quackwatch.com".
>
> When another [Association] member testified at the legislative hearing on October 23, 2007, a [Board] official responded by falsely smearing him in public with respect to a sexual allegation asserted by the [Board]. Her smear of that physician continues to be available by video over the internet.

The Court finds that these claims are individual claims and are not subject to associational representation. Despite the Association's argument that all that is required to prevail on its claims is the production of particular documents within the Board's possession, Defendants represent that they will seek discovery and that proof of the claims will necessarily involve the Association's individual members whose conduct is at issue with regard to each of the Association's claims.

The Court holds that based on the nature of the Association's claims and despite the fact that the Association requests only injunctive and declaratory relief, proof of each claim will necessarily require individualized proof from the Association's individual member physicians whose actions are at issue. Because proof and resolution of the claims asserted by the Association will unavoidably require participation by its individual members, the Court holds that the Association fails to meet the third prong of the *Hunt* test for associational standing. *See* 432 U.S. at 343.[5] Accordingly, the Court holds that the Association lacks standing to proceed with its claims in this action in federal court. The Court will grant Defendants' motion to dismiss for lack of subject-matter jurisdiction.

---

[5] In light of the Court's holding that the Association lacks standing to proceed in this action because it fails the third prong of the *Hunt* test as to all claims, the Court finds it unnecessary to address Defendants' argument that the Association fails to meet the second prong of the *Hunt* test–that the interests at issue are not within the Association's state purposes—and declines to do so.

15

**IT IS ORDERED** that Defendants' Motion To Dismiss Claims For Lack of Standing filed October 10, 2008 (Clerk's Doc. No. 81) is **GRANTED**.

**IT IS FURTHER ORDERED** that the claims raised in the Association's Complaint are **DISMISSED WITHOUT PREJUDICE FOR LACK OF SUBJECT MATTER JURISDICTION.**

**IT IS FURTHER ORDERED** that all remaining motions pending in this cause are **DISMISSED**.

As this Order disposes of all claims raised in this cause, the Court will by separate order render a final judgment.

SIGNED this 25th day of September, 2009.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE